Our second case for this morning is Wilson Burgos v. Commissioner Andrew Saul. Mr. Horne. Your honors, counsel, ladies and gentlemen, counsel represents Wilson Burgos, the plaintiff appellate in this matter. The bottom line here is that the decision failed to address too many points that favored allowance of the claim. They start with the claimant's testimony that he needed to elevate his legs for a period that the vocational expert testified would be so long that it would preclude employment. And the decision doesn't contain an explanation of why that line of evidence was rejected. And, of course, the law of this circuit is that there has to be some articulation of why the line of evidence is rejected. Now, do I remember that the administrative law judge wasn't sure why leg lifting would be helpful for Mr. Burgos' conditions? The administrative law judge said that it wasn't in Dr. Bafa's notes. And also, Dr. Bafa was the abdominal surgeon. But Dr. Bafa specifically put it in his notes. And I don't remember the administrative law judge articulating a reason why claimant didn't have to lift his legs as he said he did. So you would think your position would be that at a minimum the ALJ would have to have said there's no medical evidence apart from Dr. Bafa that this is helpful or that other medical evidence suggests one doesn't treat these hernias that way? Something like that. Yeah. And speaking of Dr. Bafa, I'm unclear why the ALJ said that there was a limited treating relationship. I mean, he performed several hernia surgeries, am I right? Right. I've seen him for six years or so. Oh, longer than that. Longer than that. Going back to 2001, if I have read the record correctly, and there seem to have been three hernias, one around 2001, one around 2008, and one around 2013. These are all the abdominal type where the old incision spot is giving way or was there an umbilical? There was an umbilical. Yeah. There was an umbilical in there too. Umbilical and I think another type was mentioned, I think a ventral hernia may have been mentioned. But yes, there was urological surgery that pierced the abdominal wall and then all the problems flowed from that. And the kidney thing too, right? Yes. Did he have the kidney? Right. That was why the abdominal wall was... Abdominal. Yeah. And to be fair to the government, there was another surgeon, that was Dr. Young. He was a urological surgeon. He did the surgery for the kidney that pierced the abdominal wall. And after a certain number of surgeries, there's not enough tissue to anchor a mesh or something else, whatever patches up an abdominal wall. We'd had, Mr. Burgos had had three surgeries by this time. And the reasons the administrative law judge for rejecting the opinion of Dr. Bafa were insufficient. She also didn't consider his specialty and the specialties of the other doctors involved. Burgos also testified that he became drowsy from his medications for a period of time that the vocational expert testified would be preclusive of work. And there was an opinion from his podiatrist that he had to elevate, not elevate, I'm sorry, had to ice his heel for a period of time that would have precluded work. The... Mr. Horne, can I ask you about the part of your argument where you focus on Mr. Burgos' drowsiness from the medication? It's pretty clear to me that he absolutely testified as to that, you know, your client. But is there any... Is there anything in any of these medical records that supports that, you know, he really, he needed to, you know, sleep at these different intervals during the day, that he was drowsy and it affected his daily activities that way? I understand all the rest of your arguments just fine. I just wondered about the medication and the drowsiness and whether that's in the medical records anywhere. If I had seen it, I'd have cited it. So if it's not cited, I didn't see it there. On the other hand, these records aren't prepared with litigation in mind. And the law, the circuit under Terry as affirmed by Stahl is that the fact that a doctor doesn't note that claim it's drowsy from his medications doesn't preclude... No, right. I get that. And I... The only reason I'm asking you about it is because Mr. Burgos, for quite a while, I mean, he was working for quite a long time, right? And then he hit a period where, I don't remember the exact date, but he didn't work beyond a particular date. Was he taking that medication during all those years he was working productively? Because he was being treated, right? I mean, the hernia issues and the kidney issues went on for quite some time. I don't know. There's a suggestion in the record that the medication was prescribed during those prior periods of time, but he just opted not to take it because he didn't want it to be drowsy and he needed to go to work. Well, if that's the case, it tends to support his claim. Yeah, that's certainly the indication I saw in the record that he simply put up with the pain so that he didn't get too drowsy to perform his functions. The podiatrist opined that claimant had to be off task icing his feet for 15 to 20 minutes three times a day. And Dr. Bafa opined that Mr. Burgos had to have his feet elevated for a period of time that would preclude employment. And the Administrative Law Judge didn't deal adequately with those opinions, particularly with the one of the podiatrist, which she really didn't deal with at all. What about the finding, I'm looking at page 13 of 16 of the ALJ's opinion, that Dr. Bafa's views were inconsistent, she says entirely inconsistent, with the findings of the primary care provider, Sarah Brownstein, who says something about unremarkable musculoskeletal and neurological findings. Is that relevant to this? I would say not, because of the specialties involved. Dr. Bafa was very specialized dealing with the abdominal surgery, and not all the abdominal surgery, because as we know, Dr. Young did some of that for the kidney. Dr. Bafa was dealing only with the hernia, as far as I grasped it. So you might have unremarkable neurological findings and still have a hernia. Right. To put it that way. They have nothing to do with one another. Right. Yes. I mean, it seems to me that the problem with the reasoning at the top of page 13, bottom of 12 and 13, as Judge Wood, is where she's focused on, is that the ALJ allowed some general opinions, not only by Brownstein, but also by Dr. Young, to kind of overcome or to trump or to weigh more than quite specific opinions that were offered by Dr. Bafa. Opinions that very much go to your client's ability to work. Correct, Your Honor. Well, if you'd like to save a minute for rebuttal, this would be a good time. Thank you. Mr. Sorkin. May it please the Court. My name is Adam Sorkin, and I represent the Commissioner of Social Security in this matter. The ALJ's finding of a residual functional capacity of a reduced range of light work was supported by substantial evidence. In this case, the ALJ went above and beyond what two state agency reviewing positions opined, as well as a consultative examiner, and accommodated Mr. Burgos with a reduced range of light work, an abdominal binder, occasional stooping and crouching, no climbing of ladders, as well as a sit-stand option. Counsel, can you address the ALJ's handling of Dr. Bafa's opinion? Of course. The ALJ provided six reasons why Dr. Bafa's opinion was entitled to little weight. He said that Dr. Bafa did not provide objective support for his conclusions. And if you look at Dr. Bafa's two-page assessment form, it is a checkbox form. He made checkmarks. But it's filled out in longhand in critical places, such as he checks yes about the leg needing to be elevated, and then he writes in how high, eight inches, how often, every two hours, how long, half hour. So there's clearly some thought. And he's also filling in some other details through here with his physician-supporting statement. But when the ALJ contrasts what is in this assessment form, which, despite some details about limitations, isn't really supported by objective evidence. For example, he checks boxes about occasional reaching, handling, fingering, and feeling. But it's unclear how that would be related to abdominal wall strain. You don't think that could be related to your core body strength? Have you ever exercised? In terms of gross or fine manipulation of your hand, picking up objects, feeling objects. If your arm is tired, you know, I don't know. We're not going to play doctor here. But the fact is, Dr. Bafa fills out this form, and contrary to what the ALJ says, at the top of page 13, there's a lengthy treating relationship. You wonder if the ALJ actually read any of these records, if she thinks that it's a limited relationship. What the ALJ says is that it's not supported by any explanation on the form. She says, first, Dr. Bafa has a limited treating relationship with the claimant and does not provide objective support for his conclusions. Well, to that I would say, first of all, it's an extensive treating relationship. Secondly, he's an expert. He is the doctor. Doctors don't normally write a big essay about their conclusions. They state their conclusions, just as an expert's entitled to. What you tend to find in Dr. Bafa's treatment notes in the record is something where he would have told Mr. Burgos to elevate his leg, something where he would have noted some abnormalities with grasping or reaching or feeling. All you see in Dr. Bafa's notes are, time and again, that he tells him to come back every six months. And why is he doing that? Just for the fun of seeing him? Mr. Burgos has a little bit of a hernia. But he required multiple operations. And a kidney condition. He does have a kidney condition, which is congenital, which he's had for his life, which has required operations in the past. And actually cutting out part of it. And fixing an obstruction in basically the tube that connects the kidney to the bladder. But he performed medium to heavy work for 20 years. Are you talking about the snowblower thing? No, I'm talking about his job as a warehouse worker. He testified that he lifted... But you had to quit. That's the thing. And you preceded some of the surgeries. His employer left Chicago, so the warehouse closed down. The day the warehouse closed down is the day that he alleged that his disability began. Now, you're familiar, I'm sure, Mr. Sorkin, with the line of our cases that say, sometimes people are actually disabled and they are putting out Herculean efforts to stay in the workforce. Of course. And we can't assume that because they somehow managed by dint of that type of extra effort to work that they weren't disabled. And this record seems to suggest that both the kidney problems and the hernia problems were quite severe. And so, yes, the job shuts down. He also argues, you know, if you really think the onset date is wrong, the ALJ could have thought about that. But I don't think that it's necessarily the case that because he filed for disability that day it's automatically... That is just one of the many factors that the ALJ mentioned. Let's go for some others. Sure. Findings inconsistent with the PCP, Sarah Brownstein. So Dr. Brownstein... Her kidneys have nothing to do with the hernia. Let's just say that. Unremarkable musculoskeletal. She's not looking for the same thing. Counsel, the way that her opinion reads, it's like she minimized the hernia and kidney thing. I mean, she begins and she focuses on, you know, mental cognitive capacity, and she's looking at this tendinitis problem. And so it's almost like everything is driven by a minimizing of the issues that he experienced. The way I read the ALJ's decision is that this is a man who has pretty unremarkable examinations with his primary care physician, who he does not tell he is in much pain. He has multiple examinations with her where he doesn't complain about his pain. It's not so much pain. Think of the snowblower incident. Maybe sitting in a chair or getting, you know, after he lifts up his legs, you know, he can manage. But whenever he tries to exert, I mean, that turned out very badly. It was an unfortunate decision on his part to try to start the thing. I guess it's one of those that you pull a cord on. So we don't see the ALJ grappling with the differences of expertise, with the differences of opinion that we see in this record. Dr. Boffa is a general surgeon, and while he did perform hernia surgery in the past, he did not perform any hernia surgery from the alleged onset to the date of the ALJ's decision. General surgeons perform hernia surgeries all the time. And I understand that. You don't need to be, like, a thoracic surgeon to do it. He did not perform a hernia surgery during this time. He consistently took a wait-and-see approach. He told Mr. Burgos to take ibuprofen for his pain. That was the level of pain that he thought Mr. Burgos was in, not that he was prescribing anything. Did you know what's happening? I mean, we're using these euphemistic medical words. His insides are squishing through this hole in his abdominal cavity. And there are listings. Eveneration, I believe is the word. There isn't a listing in the commissioner's listings that says, if you have a hernia, if you have a diagnosis of a hernia, you are disabled. That is not what the regulations say. That is not what the listing says. But we have so much more than that. We have Dr. Bafa's report saying he's got these limitations. When you look at Dr. Bafa's records itself, though, they don't really say much about any other abnormalities. Why would they? I mean, you must know how siloed doctors get. You know, he's the hernia guy. He's not the urology guy. He's not the cardio guy. He's not anything else. He's the hernia one. We see Dr. Bafa saying, this is a person who can never climb stairs. Well, we know that Mr. Burgos has 16 stairs up to his bedroom, and he continues to sleep in his upstairs bedroom, not on the living room. And maybe he just wants to. How long does it take him to go up the stairs? We know that Dr. Bafa said that he can't walk for more than two hours. We don't know. That's the problem with his daily activities. Well, and, counsel, doctors give, once they've diagnosed certain conditions or performed certain surgeries, they give standard instructions, like don't climb stairs or don't do X or don't do Y. So he's telling Mr. Burgos what he can and can't do, based on his medical opinion of having performed these procedures before. But he's checking this box form for the purposes of this litigation. That's not for the purposes of. I think the problem, the ALJ dealt you a hard hand here, okay? The reason for that is what you want to characterize as a check-the-box form is signed by a licensed medical doctor who performed multiple surgeries. And that individual said that Mr. Burgos needs to elevate his legs every two hours for a half hour at a time. But he doesn't explain why. He's a licensed physician. When you combine that with the testimony of the V.E., I don't know that you can overcome that hurdle. The V.E.'s testimony is not a medical opinion. The V.E. is merely asked to testify if there are jobs, if we accept this medical opinion as it is. If you take Dr. Bafa's statement on the check-the-box form, as you put it, he's off task more than 10%. But the point is that the ALJ doesn't take it on its face value because the regulations say that it must be supported, that it must be consistent with the record. And on the whole, it is not. It is not consistent with the record as a whole. It is not well supported by explanation. It is beyond what the ALJ, you know, the ALJ gives way more weight to other opinions of record which do not. But look at the mismatch. The ALJ says instead of recommending extreme limitations as Dr. Bafa does, the claimants of other treating providers indicate benign physical examination findings, injections for the foot and inserts, physical therapy for the spine and hips, not pertinent really to what Dr. Bafa was treating. But I'm going to invite you to wrap up because we're over time. I will wrap up by saying that I do think a general – there's 800 pages of medical records here. There's a two-page form which says one thing and there's 800 pages which seem to suggest something else, that this is a person who can walk for exercise, who can travel to Florida, who can walk three miles a day, who can do a lot more than both he and Dr. Bafa led on. And the ALJ took into consideration the totality of the evidence, discussed it very thoroughly, and found that the state agency reviewing physicians had an opinion that was more consistent with the evidence as a whole and found a reduced range of light work. All right. Thank you. Thank you very much. You have about a minute, Mr. Horn, if you'd like to take it. Thank you. So is he off there walking three miles a day? Not three miles. I don't think he was walking three miles a day. And he also says in his function reports that after 10 or 20 minutes of walking, he had to rest for a while. Also, walking three miles takes about an hour for me. For him, it might have taken a little bit longer given that he's resting. Does that mean he could walk for four, five, or six hours a day, the amount of time necessary to be on his feet to do light work? No, it doesn't. The reasons the administrative law judge was wrong about rejecting the opinion of Dr. Bafa, I've gone through all six of them in the reply brief at pages six through eight. There's plenty of support for Dr. Bafa's opinion in the record, and he didn't have a limited treating record. And because the ALJ did not properly evaluate his opinion according to the regulatory requirements, the case should go back for a new hearing. All right. Thank you. Thank you very much. Thank you, Mr. Sorkin. We will take the case under advisement.